**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | | |
|---|---|---|---|
| **KAYLANI SELENA BRONSON,** | ) | | |
| **Plaintiff,** | ) | | |
| | ) | | |
| **vs.** | ) | **Case No.** _____ | |
| | ) | | |
| | ) | **DEMAND FOR JURY TRIAL** | |
| **SUNFLOWER CARE HOMES, LLC,** | ) | | |
| **Defendant.** | ) | | |

## COMPLAINT

COMES NOW, the Plaintiff, Kaylani Selena Bronson (hereinafter "Plaintiff"), by and through her undersigned counsel, Bruce Alan Brumley and Chloe Elizabeth Davis, and for her causes of action against Defendant, Sunflower Care Homes, LLC (hereinafter "Defendant"), and states the following:

### PARTIES, JURISDICTION, AND VENUE

1. At all times pled herein and material hereto, Plaintiff was a resident of Lyon County, Kansas.

2. The Defendant, Sunflower Care Homes, LLC, is a Kansas Limited Liability Company operating under and existing under the laws of the State of Kansas and duly operating in and by virtue of the laws of the State of Kansas and may be served with process by serving its Resident Agent in Lyon County, Kansas.

3. At all times mentioned herein and material hereto, Plaintiff was employed by the Defendant listed in paragraph #2 located in Lyon County, Kansas.

4. For the claims enumerated herein that arise under federal law, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

1

5. For the claims enumerated herein that arise under state law, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Defendant is subject to the Court's personal jurisdiction within this District.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

7. Plaintiff has been a certified nurse aide since 2014 and has been a certified medication aide dating back to April 2016.

8. Defendant owns and operates multiple senior care facilities offering long-term care, respite care, daily care, and general assisted living services, classifying as an Assisted Living Facility subject to the requirements of K.S.A. § 39-923 *et. seq.* and regulated by K.A.R. § 26-41-101 *et. seq*.

9. Plaintiff was first hired by Defendant in January 2024 as a certified nurse aide and certified medication aide. Upon hire, Plaintiff negotiated a base pay rate of $20.50 per hour with potential for various pay differentials and overtime pay.

10. As a certified nurse aide and certified medication aide for Defendant, Plaintiff's responsibilities and duties included administering medications to residents, monitoring residents' health status, assisting with residents' activities of daily living, among others.

11. In approximately February 2024, Plaintiff observed that a nurse employed with Defendant was improperly recording the administration of medication(s). More specifically, Plaintiff observed that the nurse was dispensing narcotic medication to a resident, recording that the medication had been dispensed in a physical, paper log, but then not recording that the medication had been dispensed in the electronic Medication Administration Record ("MAR").

2

12.    The MAR is used across all healthcare settings to provide a comprehensive, organized record of each and every medication administered to a patient, including the medication name, strength, and directions of use. Each administration of medication is marked by the MAR with the date and time that the medication is administered. When a medical professional administers medication, they immediately record in the MAR that the medication has been administered in order for the MAR program to accurately capture the date and time of administration.

13.    Defendant is required by K.A.R. § 26-41-205(d) to document the administration of each resident's medication in the resident's MAR immediately before or following completion of administration.

14.    Upon noticing the improper administration of medication described in paragraph #11, Plaintiff immediately reported her observations to Pamela Major, CMA, as CMA Major was Plaintiff's first level of leadership for reporting purposes under these circumstances. However, shortly thereafter, Plaintiff observed that CMA Major had not properly elevated Plaintiff's complaint and that the medications continued to be inappropriately administered. As such, Plaintiff contacted the office of Defendant's owner and sole physician, Charisse Symmonds Arndt, MD (hereinafter "Dr. Symmonds Arndt") and reported the issues.

15.    Shortly following Plaintiff's report reaching Dr. Symmonds Arndt as described in paragraph #14, Dr. Symmonds Arndt commented to a colleague, who was also Plaintiff's aunt, that Plaintiff was "like a little undercover cop" and that Plaintiff was "calling out what everyone was doing wrong."

16.    On or about March 19, 2024, Plaintiff observed another nurse employed by Defendant improperly dispense medication to a resident without proper written orders from Defendant's

attending physician. More specifically, Plaintiff noticed, while dispensing a resident's medication, as she had done daily for several weeks at this point, that the medication's dosage was suddenly different than it had been. Finding this odd, Plaintiff contacted the patient's physician's office to inquire if the resident's medication dosage had been changed, whereupon Plaintiff learned that the resident's medication and/or dose had not been changed.

17.     Plaintiff then contacted the pharmacy to inquire as to why a different dosage had been delivered by the pharmacy, whereupon she learned that it was an error by the pharmacy and that the pharmacy had sent the incorrect dosage. Plaintiff then contacted her co-workers via a group messaging system to determine who had changed the dosage in the MAR system, to which the nurse indicated that it was her who changed the dosage. In other words, as opposed to returning the medication to the pharmacy and requesting that the correct dose be resent and/or conferring with the physician about changing the resident's dose, the Defendant nurse instead altered the dosage listed in the resident's MAR to match the incorrect dose sent by the pharmacy. Thereafter, Plaintiff informed Dr. Symmonds Arndt of what Plaintiff had observed as described in paragraphs #16 and #17.

18.     On several occasions in late March and early April 2024, Plaintiff noticed that Defendant struggled with adequate staffing. For example, Plaintiff would arrive for her 6PM to 6AM shift and be asked by Defendant's Assistant Director of Nursing, Amanda Trujillo, LNP (hereinafter "LPN Trujillo") and/or Defendant's Compliance Nurse / Administration Assistant, Lori Owen, LPN-IV (hereinafter "LPN-IV Owen"), to administer medications to residents that should have been administered several hours earlier. Plaintiff reported these concerns to Defendant's owner and spouse of Dr. Symmonds Arndt, Clint Arndt, who indicated that he would look into the

matter.

19.    On several occasions in April 2024, Plaintiff noticed that a resident was accidentally pricking herself in the finger when attempting to self-administer insulin, which Plaintiff reported to Defendant's House Lead, Courtney Elbert, CMA, when Plaintiff observed it happen. Additionally, on April 19, 2024, Plaintiff went further and recorded the occurrence in the resident's chart, as Plaintiff felt the concern was not being properly addressed by Defendant.

20.    On several occasions during Plaintiff's employment, she witnessed and/or heard rumors of Defendant paying nurses unreported cash payments for their services in violation of state and federal tax, labor, and employment laws.

21.    On more than one occasion in April 2024, Plaintiff noticed that Defendant had retroactively changed the dates constituting a single "pay period," thereby interfering with Plaintiff's accumulation of hours subject to overtime pay.

22.    On or about April 19, 2024, Plaintiff noticed that her paycheck was incorrect in that she had not been paid for all of the hours she had worked, both in terms of straight wages and overtime pay. As such, Plaintiff contacted LPN-IV Owen to inquire about the paycheck being incorrect that same day, to which LPN-IV Owen stated she would get back to Plaintiff.

23.    On April 23, 2024, when Plaintiff had yet to receive a response from LPN-IV Owen regarding the wages owed, Plaintiff contacted LPN-IV Owen once again inquiring about the wages, to which she received no meaningful response.

24.    Because Plaintiff had not received any response from Defendant regarding the wages owed, Plaintiff filed a complaint with the Kansas Department of Labor Wage and Hour Division regarding the unpaid wages on April 23, 2024. During this conversation with the Kansas

Department of Labor Wage and Hour Division, Plaintiff also reported that she had witnessed Defendant paying nurses unreported cash payments for their services.

25. Both Plaintiff and Defendant received notice via mail of Plaintiff's complaint to the Kansas Department of Labor Wage and Hour Division on April 24th or 25th, 2024.

26. On April 25, 2024, LPN-IV Owen called Plaintiff and urgently demanded that Plaintiff arrive two hours earlier than her scheduled shift for a meeting.

27. Upon Plaintiff's arrival at the facility, Plaintiff was led to LPN Trujillo's office along with CMA Elbert. LPN Trujillo proceeded to inform Plaintiff she was being suspended pending investigation, falsely alleging that Plaintiff had failed to report the incident involving a resident accidentally pricking her finger while self-administering insulin as described in paragraph #19. Plaintiff explained to LPN Trujillo that she had both charted the incident and reported the incident to CMA Elbert, who was the appropriate individual to report the incident to as CMA Elbert was the "House Lead," who should then elevate the report as necessary. LPN Trujillo turned to CMA Elbert and asked whether Plaintiff had reported the situation to CMA Elbert, who responded in the affirmative. LPN Trujillo then stated, "I don't really know what's going on" and that "Lori just said I need to suspend you," before concluding the meeting.

28. Plaintiff never received any discipline or negative performance feedback from Defendant at any point prior to being placed on suspension as described in paragraph #27.

29. On April 26, 2024, Plaintiff sent a text message to Mr. Arndt inquiring about the basis for her suspension and asking when she could return to work. Mr. Arndt did not respond to Plaintiff's message.

30. On April 28, 2024, Plaintiff sent a text message to LPN-IV Owen again inquiring about

the basis for the suspension and asking when she could return to work. LPN-IV Owen did not respond to Plaintiff's message.

31.    On May 1, 2024, Plaintiff sent a text message to LPN-IV Owen inquiring whether she was expected to attend a company-wide meeting scheduled for that day. LPN-IV Owen responded that Plaintiff could attend via video teleconference, if Plaintiff wanted to.

32.    On May 3, 2024, Plaintiff again sent a text message to LPN-IV Owen inquiring if there was any update regarding the suspension. LPN-IV Owen did not respond to Plaintiff's message.

33.    On May 17, 2024, Plaintiff received correspondence in the mail from Defendant terminating Plaintiff's employment.

## COUNT I: VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

34.    Plaintiff incorporates by reference the above paragraphs numbered 1 through 33 as though fully set forth herein.

35.    At all relevant times herein, Defendant constitutes a covered "employer" within the meaning of the Fair Labor Standards Act (hereinafter "FLSA") in that Defendant is an institution primarily engaged in the in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution.

36.    At all relevant times herein, Plaintiff constitutes a covered "employee" within the meaning of the FLSA in that Plaintiff is an individual employed by Defendant.

37.    The FLSA requires employers to pay at least the federal minimum wage and overtime pay rates and to maintain proper wage reporting and recordkeeping.

38.    The FLSA prohibits retaliation by employers against employees that exercise their rights under the FLSA, including asserting their rights under wage and hours, filing complaints with

governmental agencies, and cooperating with governmental agency investigations related FLSA violations.

39. Defendant violated the FLSA in regard to Defendant's underpayment of both straight and overtime wages earned by Plaintiff.

40. Defendant violated the FLSA in regard to Defendant's failure to maintain proper record keeping as it relates to the unreported payment of wages to Defendant employees.

41. Defendant violated the FLSA in regard to retaliating against Plaintiff for engaging in protected activity under the FLSA, including terminating Plaintiff's employment after Plaintiff inquired about her wages and filed a complaint with the Kansas Department of Labor Wage and Hour Division.

42. The FLSA violations described herein were willfully committed by Defendant and with Defendant's full knowledge.

43. As a direct and proximate result of Defendant's unlawful behavior herein, Plaintiff has suffered and will continue to suffer lost wages, a deprivation of income, as well as other monetary and non-monetary damages.

44. Plaintiff is entitled to attorney's fees as provided in the FLSA, and for the fees and costs in bringing this action.

WHEREFORE, Plaintiff prays the Court enter judgment in her favor against Defendant on Count I of Plaintiff's Complaint, finding that she was subject to the unlawful withholding of wages and unlawful retaliation for engaging in activity protected under the FLSA, for an award of back pay and benefits including interest, an award of front pay and benefits including interest, an award of liquidated damages, the costs of this action, reasonable attorneys' fees, and for other

such relief as the Court deems just and equitable.

### COUNT II: VIOLATIONS OF THE KANSAS WAGE PAYMENT ACT

45.     Plaintiff incorporates by reference all aforementioned paragraphs 1 through 44 above as if fully set forth herein.

46.     At all times pled herein and material hereto, Defendant constituted an entity subject to the Kansas Wage Payment Act (hereinafter "KWPA") in that Defendant is any individual, partnership, association, joint stock company, trust, corporation, limited liability company or other organization employing a person.

47.     At all times pled herein and material hereto, Plaintiff constituted an employee subject to the KWPA in that Plaintiff was allowed or permitted to work by the Defendant.

48.     Defendant has a policy, practice, and/or procedure of suffering or permitting its employees to work without due compensation. Specifically, Defendant failed to compensate Plaintiff for all wages owed to her by failing to pay Plaintiff all straight wages earned by Plaintiff. Defendant has a policy and/or practice of permitting or suffering employees to work without compensating them for all straight hours worked.

49.     Defendant's policy, practice, and/or procedure resulted in substantial underpayment of wages to Plaintiff by denying compensation that is owed.

50.     The KWPA requires employers to pay to employees "all wages due" at least once per month, on regular paydays, with which Defendant refused to adhere by failing to pay Plaintiff all wages owed to her on regular paydays.

51.     Defendant had significant managerial control over the operations, policies, practices, and/or procedures regarding the employment of Plaintiff, including the authority to determine

and enforce compensation policies.

52.     The unlawful withholding of wages by Defendant is willful.

53.     Plaintiff has been damaged by Defendant's unlawful withholding of wages.

54.     In response to Plaintiff's inquiries and complaints regarding Defendant's unlawful wage practices, Defendant abruptly terminated Plaintiff's employment in retaliation for pursuing her rights under the KWPA.

55.     As a direct and proximate result of Defendant's unlawful behavior herein, Plaintiff has suffered and will continue to suffer lost wages, a deprivation of income, as well as other monetary and non-monetary damages.

56.     Plaintiff is entitled to attorney's fees as provided in the KWPA, and for the fees and costs in bringing this action.

WHEREFORE, Plaintiff prays the Court enter judgment in her favor against Defendant on Count II of Plaintiff's Complaint, finding that she was subject to the unlawful withholding of wages and unlawful retaliation for engaging in activity protected under the KWPA, for an award of back pay and benefits including interest, an award of front pay and benefits including interest, an award of compensatory and punitive damages, the costs of this action, reasonable attorneys' fees, and for other such relief as the Court deems just and equitable.

<u>**COUNT III: VIOLATIONS OF K.S.A. § 65-4928**</u>

57.     Plaintiff incorporates by reference all aforementioned paragraphs 1 through 56 as if fully set forth herein.

58.     Defendant herein constitutes a health care provider pursuant to K.S.A. § 65-4921(c) in that Defendant is a medical care facility licensed by the State of Kansas and/or a professional

corporation organized pursuant to the professional corporation law of Kansas by persons who are authorized by such law to form such a corporation and who are healthcare providers as defined by this subsection, and/or a Kansas limited liability company organized for the purpose of rendering professional services by its members who are healthcare providers as defined by this subsection and who are legally authorized to render the professional services for which the limited liability company is organized, and/or a partnership of persons who are healthcare providers under this subsection, and/or a Kansas not-for-profit corporation organized for the purpose of rendering professional services by persons who are healthcare providers as defined by this subsection, and/or a nonprofit corporation organized to administer the graduate medical education programs of community hospitals or medical care facilities affiliated with the university of Kansas school of medicine as defined by K.S.A. § 40-3401(f).

59.    Plaintiff constitutes a medical care facility agent or employee directly involved in the delivery of health care services pursuant to K.S.A. § 65-4923(a).

60.    Plaintiff's reported concerns described herein constitute reportable incidents that were or may have been below the applicable standard of care and had a reasonable probability of causing injury to the patient or may have been grounds for disciplinary action by the appropriate licensing agency pursuant to K.S.A. § 65-4921(f).

61.    Plaintiff had knowledge that Defendant committed or may have committed reportable incident(s) in that Plaintiff observed the incident(s) pursuant to K.S.A. § 65-4923(a)(4).

62.    Plaintiff reported the incident(s) to appropriate members of her supervisory staff, including Defendant's owner, satisfying the reporting requirements pursuant to K.S.A. § 65-4923.

63.     Plaintiff's May 17, 2024 termination by Defendant in response to Plaintiff's reporting as described herein constitutes retribution prohibited by K.S.A. § 65-4928.

64.     As a direct and proximate cause of Defendant's unlawful behavior, Plaintiff has suffered lost wages, emotional duress, damage to professional reputation, future lost wages, consequential damages, attorneys' fees and costs, and any other damages that may be found to relate to the retaliatory conduct described herein.

WHEREFORE, Plaintiff prays the Court enter judgment in her favor against Defendant on Count III of Plaintiff's Complaint, finding that she was subject to unlawful retaliation for engaging in activity in violation of K.S.A. § 65-4928, for an award of back pay and benefits including interest, an award of front pay and benefits including interest, an award of compensatory damages, the costs of this action, reasonable attorneys' fees, and for other such relief as the Court deems just and equitable.

## COUNT IV: WHISTLEBLOWER RETALIATION

65.     Plaintiff incorporates by reference all aforementioned paragraphs 1 through 64 as if fully set forth herein.

66.     The incidents referenced in paragraphs #11 and #16-22 constitute serious deviations, infractions, and/or violations of well-established rules and regulations set in place by controlling authorities and Kansas law.

67.     The incidents referenced in paragraphs #11, #14, #16-19 constitute serious threats to patient/resident well-being and safety.

68.     Plaintiff's termination constitutes wrongful and illegal retaliation by Defendant, in that Defendant's retaliatory treatment toward Plaintiff is due to the fact that Plaintiff reported in good

faith the actions of co-worker(s) – sanctioned by supervisory staff – that constituted serious infractions of several rules, policies, regulations, procedures, and laws pertaining to public health, safety, and the general welfare.

69.    Plaintiff is alleging that retaliation has occurred within the line of cases establishing the tort of retaliatory discharge as set out in *Palmer v. Brown*, 242 Kan. 893 (1988), 752 P.2d 685 (1988), and cases interpreting that line of case law, which establishes this cause of action and tort of law.

70.    Plaintiff herein is able to establish a prima facie claim of retaliatory discharge in *Palmer v. Brown*, 242 Kan. 893 (1988), 752 P.2d 685 (1988), and cases interpreting that line of case law, which establishes the prima facie elements of a retaliatory discharge claim for reporting a co-worker's serious infraction of rules, regulations, and laws pertaining to public health, safety, and the general welfare as the following: 1) Plaintiff must establish that a reasonably prudent person would have concluded that the co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; 2) the employer had knowledge of the employee's reporting of such violation prior to the discharge of the employee; and 3) the employee was discharged in retaliation for making the report.

71.    Plaintiff is alleging damages including lost wages, emotional duress, damage to professional reputation, future lost wages, consequential damages, and any other damages that may be found to relate to the retaliatory conduct described herein.

72.    As a direct and proximate result of the Defendant's wrongful conduct and retaliation against the Plaintiff, the Plaintiff has suffered lost wages, emotional duress, damage to professional reputation, future lost wages, consequential damages, attorneys' fees and costs, and

any other damages that may be found to relate to the retaliatory conduct described herein.

WHEREFORE, Plaintiff prays the Court enter judgment in her favor against Defendant on Count IV of Plaintiff's Complaint, finding that she was subject to unlawful retaliation for engaging in protected activity under Kansas law, for an award of back pay and benefits including interest, an award of front pay and benefits including interest, an award of compensatory damages, the costs of this action, reasonable attorneys' fees, and for other such relief as the Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant, as follows:

A.      Entry of judgment in favor of Plaintiff against Defendant on all claims for relief;

B.      An order awarding Plaintiff damages and liquidated damages she has sustained as a result of Defendant's willful violations of federal and state wage and hour laws;

C.      An order enjoining Defendant, its officers, agents, servants, employees, attorneys, and affiliated companies, its assigns and successors in interest, and those persons in active concert or participation with Defendant, from continued acts in violation of the FLSA, KWPA, and Kansas common law related to unlawful discharge;

D.      An order awarding Plaintiff attorney's fees and costs for the bringing of this action;

E.      An order awarding prejudgment interest at the statutory rate from the time payments came due; and

F.      Any and all other legal and equitable relief as may be available under law that the Court may deem proper.

Respectfully submitted,

*/s/Bruce Alan Brumley*
*/s/Chloe Elizabeth Davis*
Bruce Alan Brumley, #16066
Chloe Elizabeth Davis, #28517
2348 Topeka Boulevard #201
Topeka, KS 66611
bruce@brucebrumleylaw.com
chloe@brucebrumleylaw.com
P: 785-267-3367 / F: 785-233-3161
Attorneys for Plaintiff

15

## DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, Kaylani Bronson, and demands a trial by jury on all of the issues in the above-captioned case.

Respectfully submitted,

*/s/Bruce Alan Brumley*
*/s/Chloe Elizabeth Davis*
Bruce Alan Brumley, #16066
Chloe Elizabeth Davis, #28517
2348 Topeka Boulevard #201
Topeka, KS 66611
bruce@brucebrumleylaw.com
chloe@brucebrumleylaw.com
P: 785-267-3367 / F: 785-233-3161
Attorneys for Plaintiff